IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| TYRONE THOMPSON, | ) | 1:14-cv-01896-LJO-BMK |
| | ) | |
| Plaintiff, | ) | |
| | ) | FINDINGS AND |
| vs. | ) | RECOMMENDATION TO GRANT |
| | ) | DEFENDANTS' MOTION FOR |
| VIDURRIA, ET AL., | ) | SUMMARY JUDGMENT (DOC. 62) |
| | ) | |
| Defendants. | ) | |
| | ) | |
| _____ | ) | |

FINDINGS AND RECOMMENDATION TO GRANT DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT (DOC. 62)

Before the Court is Defendants Martinez and Vidurria's Motion for Summary Judgment (Doc. 62). After careful consideration of the Motion and the supporting and opposing memoranda, the Court finds and recommends that summary judgment be GRANTED in Defendants' favor.

BACKGROUND

Plaintiff Tyrone Thompson is a California Department of Corrections and Rehabilitation inmate. He has been serving a sentence of twenty-five years to life in prison for possession of cocaine for sale since 1997.

Beginning in January 2012, Plaintiff has had a history of severe coccidioidomycosis pneumonia, commonly known as Valley Fever. (Defendants'

Ex. 4.)  Valley Fever is an illness caused by a fungus that usually infects the lungs, causing flu-like symptoms.  (Plaintiff's Ex. 8.)  Also in 2012, Plaintiff injured his back when he fell down stairs.  (Defendants' Ex. 6.)  Since the back injury, Plaintiff has been using a wheelchair intermittently.  (Id.)

On July 10, 2012, Form 1845 entitled Disability Placement Program Verification was completed by Dr. O. Owolabi for Plaintiff.  (Defendants' Ex. 1.)  On that form, Dr. Owolabi designated Plaintiff as a "Disability Placement – Other" ("DPO").  (Id.)  The designation as DPO means Plaintiff has "a permanent disability that requires the use of a wheelchair outside a cell (does not require use of a wheelchair inside a cell), requires lower bunk, wheelchair accessible path of travel and does not require wheelchair accessible housing."  (J. Bick, M.D. Decl'n 1/19/2015 at ¶ 5 (emphasis in original); Defendants' Ex. 1 at 1.)  Based on his DPO classification, Plaintiff is considered to be "an 'intermittent wheelchair user' who is able to ambulate short distances."  (Bick Decl'n at ¶ 5.)  Notably, Plaintiff was not designated the higher disability classification, "Disability Placement – Wheelchair (DPW)," which is appropriate for inmates who require use of a wheelchair at all times "both within and outside the assigned cell/housing unit."  (Id.)

On Form 1845, Dr. Owolabi did not include any notation that Plaintiff requires use of a wheelchair accessible van for transportation.  (Id.; Defendants' Ex. 1)  "If a wheelchair accessible van was required, it would have been

2

documented on this form." (Bick Decl'n at ¶ 5.) Form 1845 was operative on the date of the incident (May 2, 2014), as it was not superseded or revised between July 10, 2012 and that date. (Id.)

On February 21, 2014, Form 7410 entitled Comprehensive Accommodation Chrono was completed for Plaintiff. (Defendants' Ex. 2.) This form is completed by a physician if a patient-inmate requires accommodations due to a medical condition. (Id.) The form noted that Plaintiff required the use of a cane and wheelchair, but it did not state that Plaintiff required a wheelchair accessible van for transportation. (Id.; Bick Decl'n at ¶ 6.) As with Form 1845, "if a wheelchair accessible van was required, it would be documented on this form." (Bick Decl'n ¶ 6.)

At an office visit with Plaintiff's primary care physician on March 17, 2014, his physician reviewed Plaintiff's chest x-ray and CT scan, which showed changes in the right lobe of his lung. (Defendants' Ex. 4) He recommended that Plaintiff complete a Position Emission Tomography scan ("PET scan") of his chest "to rule out any restrictive lung disease." (Bick Decl'n ¶ 10; Defendants' Ex. 4 & 5.) The doctor noted that, if the PET scan was negative, Plaintiff "will not need any further workup at all." (Defendants' Ex. 4.) However, "if the PET scan is positive, then I would like to reevaluate the patient to make any further

3

recommendations." (Id.)

The PET scan was scheduled for May 2, 2014. (Defendants' Ex. 5.) That morning, Defendant Vidurria arrived at Plaintiff's housing unit with a non-wheelchair accessible van to transport him to the medical facility. (Complaint at 3.) Upon seeing that Plaintiff was in a wheelchair, Defendant Vidurria told him "if you cannot go up and down the stairs to the van, I'm not taking you to your appointment." (Id.) After Plaintiff said he could not go up and down the stairs of the van, Defendant Vidurria did not take him to his PET scan that day. (Id.)

Three days later, Plaintiff's primary care physician examined Plaintiff. (Defendants' Ex. 3.) The physician was aware that Plaintiff refused to get into the non-wheelchair accessible van, but noted that Plaintiff "is DPO and should be able to transfer from [wheelchair]" into the van. (Id.) The physician also noted that "my physical exam do[es] not correlate to [Plaintiff's] inability to transfer." (Id.)

The PET scan was eventually performed on October 13, 2014. (Defendants' Ex. 8.) The results of the scan were negative and Plaintiff's primary care physician stated that Plaintiff was "doing very well." (Id.)

On December 1, 2014, Plaintiff brought this action against Defendants for violation of his Eighth Amendment right against deliberate indifference to a serious medical need. He claims that Defendant Vidurria's refusal to obtain a

4

wheelchair accessible van to transport Plaintiff to his PET scan on May 2, 2014 caused him "all kinds of medical problems and pain."  (Complaint at 6.)

## DISCUSSION

I.      Eighth Amendment and Deliberate Indifference

Under 42 U.S.C. § 1983, to maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show "deliberate indifference to serious medical needs."  Estelle v. Gamble, 429 U.S. 97, 104 (1976).  In the Ninth Circuit, the test for deliberate indifference consists of two parts.  Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006).  "First, the plaintiff must show a 'serious medical need' by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'"  Id.  "Second, the plaintiff must show the defendant's response to the need was deliberately indifferent."  Id.  This second prong is satisfied by showing "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference."  Id.  "Deliberate indifference is a high legal standard."  Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004).

1. Whether Plaintiff Had a "Serious Medical Need"

The evidence before the Court contradicts Plaintiff's claim that he had a "serious medical need" to be transported by a wheelchair accessible van.  On Form 1845, Plaintiff was designated as a DPO who could ambulate short distances

5

and uses a wheelchair intermittently, unlike DPW designees who require use of a wheelchair at all times.  (Bick Decl'n ¶ 5; Defendants' Ex. 1.)  Neither Plaintiff's Disability Placement Program Verification Form 1845 nor his Comprehensive Accommodation Chrono Form 7410 indicated that he required use of a wheelchair accessible van for transport.  (Defendants' Exs. 1 & 2.)  If Plaintiff required such a van for transportation, it would have been documented on these forms.  (Bick Decl'n ¶¶ 5-6.)

Additionally, three days after the May 2, 2014 incident, Plaintiff's primary care physician examined him and concluded that Plaintiff should have been able to transfer from his wheelchair into the non-wheelchair accessible van. (Ex. 3.)  Dr. Bick, who also examined Plaintiff after the May 2, 2014 incident, likewise concluded "to a reasonable medical probability that Plaintiff did not have a medical necessity for a wheelchair accessible van on the date of the incident." (Bick Decl'n ¶ 8; Ex. 6.)

Based on the foregoing evidence, the Court finds that Plaintiff did not have a medical necessity for a wheelchair accessible van on May 2, 2014. Therefore, the Court finds that Plaintiff does not meet his burden to show a "serious medical need" to be transported by a wheelchair accessible van on that date.  Jett, 439 F.3d at 1096.

2.  Whether Defendants' Action Was "Deliberately Indifferent"

Plaintiff must also demonstrate that Defendants' response to his serious medical need was "deliberately indifferent." Jett, 439 F.3d at 1096. This requires a showing that Plaintiff suffered "harm caused by the indifference." Id. Where no harm results to a plaintiff from a defendant's actions, his Eighth Amendment claim fails. See White v. Kasawa, No. C 08-3781 SI, 2010 WL 986820, at *12 (N.D. Cal. Mar. 17, 2010)

The evidence before the Court establishes that Plaintiff did not suffer any harm from missing the PET scan scheduled for May 2, 2014. The PET scan was only for diagnostic purposes "to rule out any restrictive lung disease." (Defendants' Ex. 4; Bick Decl'n ¶ 14.) At the time the PET scan was recommended, the probability of a malignancy was low. (Defendants' Ex. 7; Bick Decl'n ¶ 14.) After the PET scan results came back negative, any potential malignancy of the right lung was ruled out. (Defendants' Ex. 7; Bick Decl'n ¶ 14.) Based on these results, Dr. Bick opined to a reasonable medical probability that "Plaintiff did not suffer any harm from missing the appointment of May 2, 2014" and that, because the scan was "in no way therapeutic," its delay "cannot and did not exacerbate Plaintiff's pathologies." (Bick Decl'n ¶ 14.)

In light of the evidence before this Court, the Court finds the PET scan was used for diagnostic purposes only and delaying the scan until October 2014 did not harm Plaintiff or exacerbate his medical issues. Absent a showing of harm

7

caused by Defendants' actions, the Court finds that Plaintiff fails to demonstrate deliberate indifference. Jett, 439 F.3d at 1096 (deliberate indifference requires a showing that harm was caused by the defendant's actions); see e.g., White, 2010 WL 986820, at *12 (concluding the plaintiff's Eighth Amendment claim failed because defendant's actions caused "no harm").

II.   Qualified Immunity

Defendants also argue they are entitled to qualified immunity, which protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In Saucier v. Katz, 533 U.S. 194, 201 (2001), the Supreme Court set forth a two-pronged test to determine whether qualified immunity exists. First, courts must consider this threshold question: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Id. at 201. If no constitutional right was violated, the inquiry ends and defendants prevail. See id. If, however, "a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." Id. at 201-02.

As discussed in the preceding sections, the evidence before the Court does not establish a violation of Plaintiff's Eighth Amendment right against

8

deliberate indifference to a serious medical need. Insofar as Defendants prevail on the first step of the <u>Saucier</u> analysis, the Court finds that Defendants are entitled to qualified immunity and need not proceed to the second step of the analysis. <u>See, e.g.</u>, <u>White</u>, 2010 WL 986820, at *13 ("Defendants prevail on the first step of the <u>Saucier</u> analysis, so the court need not proceed to the second step of the <u>Saucier</u> analysis.").

## CONCLUSION

For the foregoing reasons, the Court finds that Defendants did not violate Plaintiff's Eighth Amendment right against deliberate indifference to a serious medical need. The Court also finds that Defendants are entitled to qualified immunity. The Court therefore recommends that Defendants' Motion for Summary Judgment (Doc. 62) be GRANTED and that Judgment be entered in favor of Defendants.

These Findings and Recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within fourteen (14) days after being served with these Findings and Recommendations, any party may file written objections with the Court. Local Rule 304(b). The document shall be captioned "Objections to Magistrate Judge's Findings and Recommendation." Responses, if any, are due within fourteen (14) days after being served with the objections. Local Rule 304(d). The parties are

advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014).

    IT IS SO ORDERED.

    DATED: Honolulu, Hawaii, June 8, 2016



    /S/ Barry M. Kurren
    Barry M. Kurren
    United States Magistrate Judge

Tyrone Thompson v. Vidurria, et al., 1:14-cv-01896 LJO-BMK, FINDINGS AND RECOMMENDATION TO GRANT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DOC. 62).